JOHN C. JACKSON, Adm'r., v. ARCHIBALD SHIELDS and others.

*Executors and Administrators—Confederate Money.*

1. An administrator, making a partial settlement with the next of kin, and retaining in his hands certain interest-bearing notes for the purpose of meeting claims against the estate then in litigation, provided they be declared valid, and who fails to keep an account of the time when the notes were collected and the amount of interest received, will be charged with interest during the whole time.

2. The case of *Purvis* v. *Jackson*, 69 N. C., 474, in reference to payment of Confederate money into the clerk's office, approved.

(*Purvis* v. *Jackson*, 69 N. C., 474; *Finch* v. *Ragland*, 2 Dev. Eq., 137, cited and approved.)

CIVIL ACTION tried on exceptions to referee's report, at Spring Term, 1882, of MOORE Superior Court before *Shipp, J.*

Cornelius Shields died in Moore county in 1857, and letters of administration upon his estate were granted to John C. Jackson, the plaintiff of record. At April term, 1859, of the county court, the plaintiff, as such administrator, filed a petition against the next of kin of his intestate, alleging that he had paid the debts of the estate and had in hand a large sum for distribution, and praying the court to have an account taken of his administration, and of the advancements that had been made by his intestate, and to ascertain and decree upon the distributive share of each one of the next of kin.

A reference was made to a commissioner, and upon the coming in of his report, at April term, 1860, a decree was made charging the plaintiff with the sum of $13,227.72 as constituting the entire amount of the estate.

There were then some claims in litigation against the estate, and in order to provide for them in case they should be declared valid, it was provided in the said decree that the plaintiff should retain in his hands until the further order of the court, certain bonds then due and bearing interest, and amounting to $800, and the balance of the estate was directed to be distributed amongst the next of kin—the share of each one being definitely ascertained, and by the terms of the decree directed to bear interest from the 25th day of October, 1859.

In 1879, the defendants of record, being the next of kin of said intestate in whose behalf the decree had been rendered, filed an affidavit before the clerk of the superior court of Moore county, setting forth that the plaintiff had never paid the several amounts decreed to be due to them, nor in any wise discharged himself thereof, and asking that the cause might be transferred to the docket of that court, and

reference be ordered to ascertain the amount still due from the plaintiff on the judgments rendered against him in favor of each of the defendants, and also to ascertain what disbursements, if any, he had made of the fund of $800, directed to be retained by him to meet possible contingencies.

After due notice to him the plaintiff filed an answer in which he insisted that he had paid the defendants the full amounts decreed to be due them, and had properly disbursed the whole sum of $800 left in his hands, and thereupon issues were joined and certified to the superior court at term for trial, and by consent were referred to A. H. McNeill to ascertain the facts and report his conclusions thereon.

To the report of the referee the defendants filed exceptions which were overruled by the court and they appealed. The nature of the exceptions appear in the opinion of this court.

No counsel for plaintiff.
*Messrs. Hinsdale & Devereux*, for defendants.

RUFFIN, J. The first exception taken in this court is the one numbered two in the record, and is a mere matter of computation. The referee finds that under the decree rendered in 1860, there was due to the defendant, Robert Shields, the sum of $416.10, with interest from the 25th day of October, 1859, and that this amount had been fully paid to him by the plaintiff. The only payments which the evidence discloses as having been made to him, amount to $412.52 of which $406.71 was paid him on the 7th of September, 1860, and $5.81 on the 1st of October of the same year. At that time there was due as principal and interest the sum of $441.06—thus showing a balance of $28.54, for which with interest from the said 1st of October, he is entitled to have execution against the plaintiff.

Second exception (No. 7). The referee finds that by said decree there was due to the defendant, Cornelius Purvis, the sum of $97.90 also with interest from the 25th day of October, 1859, and that there had been paid to him the sum of $50 on the 28th day of February, 1863; $25.00 on the 20th of April, 1872, and $10.00 on the 8th of August, 1876—thus leaving a balance of $4.95 still due him from the plaintiff. The exception has reference to the $50 thus allowed as a payment. According to the finding it was paid by the plaintiff, not to the defendant in person, but into the clerk's office for him, and in Confederate money; and there is nothing, either in the evidence, or the findings, going to show that the defendant had any knowledge of it, or in any way gave his consent to it. The case therefore falls directly within *Purvis* v. *Jackson*, 69 N. C, 474. Indeed it is impossible to avoid a conviction that a payment in this case was made at the same time and under exactly the same circumstances, as that which was then the subject of review, and of course it must share the same fate.

Third exception (Nos. 10 and 14). The referee finds as a fact that on the 8th day of September, 1873, the plaintiff paid the debts for which suits were pending at the date of the decree, and that they amounted to the sum of $434.11—thus leaving of the $800 retained in his hands a balance of $365.89, and he further finds as a conclusion of law, that the plaintiff should be charged with interest only on such balance and from the date of the payment; whereas the defendants insist, that as the bonds retained were all interest-bearing, the plaintiff should be charged with the same from the date of the decree.

The referee also finds in this connection, that the plaintiff kept no account as administrator, and that he is unable to say when he collected the bonds or how much interest was received thereon.

It is no where denied that the bonds have been collected,

and as they bore interest, the administrator must have received it when he collected the principal, and as he would keep no accounts to show when he received it, or how much, there is no alternative but to charge him with the interest during the whole period. Speaking of just such a case, in *Finch* v. *Ragland*, 2 Dev. Eq., 137, the court declared that there was but one of two things the court could do—either to charge the administrator with interest, at the risk of making him pay more than he had received, or else allow him to keep the interest actually received as his own, and thereby encourage him to use his trust fund for his own advantage, and to keep no accounts, or if any, not true ones. When two such alternatives present themselves, it was said, the court could not hesitate about which to adopt. The plaintiff must therefore be charged with interest on $800 from the 25th day of October, 1859, until paid, giving him credit for $437.11 paid according to the referee's finding on the 8th September, 1873, and also for $50 paid his attorneys, April 1st, 1879, and $374.99, paid to the clerk of the court and to Hinsdale and Worthy on the 26th day of July, 1880.

Fourth exception (No. 11). As the plaintiff is charged with interest upon the whole sum of $800, it would not be proper to charge him with it again upon the McKoy and Stults bonds, they being embraced in the larger sum.

The first, second and third exceptions of the defendants are sustained, and their fourth overruled. Their other exceptions were expressly abandoned by counsel, and therefore we have not considered them.

Error.                               Judgment accordingly.